## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**ALIVIO MEDICAL CENTER,**

Civ. Action No. 1:24-cv-07217

*Plaintiff*,

Judge Jeffrey I. Cummings

v.

Magistrate Judge Keri L. Holleb

**NATIONAL LABOR RELATIONS BOARD, et al.**

*Defendants*.

## BRIEF OF AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO) AND SERVICE EMPLOYEES UNION INTERNATIONAL (SEIU) AS *AMICI CURIAE* IN OPPOSITION TO INJUNCTIVE RELIEF

George A. Luscombe, III (IL #6290097)
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, LLP
8 South Michigan -19th Floor
Chicago, IL 60603
(312) 372-1361
gluscombe@laboradvocates.com

Harold Craig Becker, Senior Counsel
Maneesh Sharma, Associate General Counsel
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
cbecker@aflcio.org
(202) 637-5310

Steven K. Ury, General Counsel
Elena Medina, Associate General Counsel
John M. D'Elia, Assistant General Counsel
Service Employees International Union
1800 Massachusetts Avenue NW
Washington, D.C. 20006
steve.ury@seiu.org
(202) 730-716

Counsel for *Amici*

**Table of Contents**

INTEREST OF AMICUS CURIAE ............................................................................... 1

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 3

   I.   Alivio's Claim Regarding the NLRB Members' Removal Protections is Not Ripe for Review ................................................................................................................. 3

   II.   Alivio Fails to Even Suggest a Presidential Desire to Remove the ALJ or Board Members, which is Required to Secure Injunctive Relief ........................................... 3

     A.   The Court Should Not Follow Out-of-Circuit District Court Decisions that Ignores the Causal-Harm Requirements ...................................................................................... 9

     B.   If Alivio Were Correct, Virtually All Agency Adjudication Must Be Enjoined ........ 11

   III.   Alivio's Subpoena Dispute Provides No Grounds for Injunctive Relief ...................... 12

CONCLUSION ......................................................................................................... 14

CERTIFICATE OF SERVICE ..................................................................................... 15

## INTEREST OF AMICUS CURIAE

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 60 national and international labor organizations with a total membership of over 12.5 million working men and women. The Service Employees International Union ("SEIU") is a labor organization that represents approximately 2 million working people, and its local SEIU HCII is the Charging Party in the underlying unfair labor practice matter, which commenced over two years ago.

For almost 90 years, *amici*—as well as AFL-CIO-affiliated unions and SEIU locals—have relied on the National Labor Relations Board ("NLRB" or "Board") to preserve their members' right to engage in protected concerted activity, remedy unfair labor practices, and resolve questions concerning representation. The AFL-CIO and SEIU have a strong interest in ensuring that the Board is able to continue to carry out its vital function, to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights.

## INTRODUCTION

More than seventeen months after it first received notice of a hearing before an NLRB administrative law judge, Plaintiff Alivio Medical Center, Inc. ("Alivio") comes to this Court and makes a radical argument to enjoin the entirely ordinary procedures of the NLRB that have been used for decades to enforce the law. Alivio claims that it is at imminent risk of being subjected to an "unconstitutional administrative proceeding" because the NLRB's ALJ—and the NLRB Members themselves—are unconstitutionally insulated from removal. Mot. 2; Doc. #:22-1, PageID #:83. The consequences of accepting Alivio's extreme positions would be to prevent enforcement of federal labor law in the Northern District of Illinois.

1

But Alivio presents no reason for this Court to take that radical step. *First*, its claim regarding the removal protections for the Board Members is not ripe for injunctive relief. *Second*, Alivio fails to allege that the NLRB ALJ's and Members' removal protections are likely to cause it any harm. But in order to "invalidate an agency action due to a removal violation, that constitutional infirmity must cause harm to the challenging party," and so the failure to allege any harm caused by the removal protections is fatal to Alivio's claim and its request for injunctive relief. *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 316 (6th Cir. 2022) (cleaned up), *rev'd on other grounds*, 598 U.S. 623 (2023); *see also Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 753 (10th Cir. 2024) ("merely being subjected to an agency constructed in violation of the separation of powers does not, by itself, constitute irreparable harm" (cleaned up)). *Third*, Alivio attempts to turn a garden-variety dispute over trial subpoenas into a cause for injunctive relief. Not only is that not a grounds for such relief, but, as we demonstrate below, this Court does not have jurisdiction over the claim. The Court should deny Alivio's motion.[1]

---

[1] Before delving into Alivio's claims, this Court should deny injunctive relief based on the doctrine of laches. Laches applies where (1) there has been a lack of diligence by the party against whom the defense is asserted, and (2) there is prejudice to the party asserting the defense. *Costello v. United States*, 365 U.S. 265, 282, (1961); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). Both are present here. *First*, Alivio waited to file suit for nearly a year and half after it first received notice of a hearing before an ALJ. Mot. 3-4; PageID# 84-85; *see Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F.Supp.3d 949, 953 (N.D. Ill. 2018) ("A lengthy, unexplained delay in seeking relief calls into question how urgent the need for preliminary equitable relief really is." (cleaned up)). *Second*, Alivio's delay prejudiced the Board because the agency was forced to respond to multiple constitutional arguments in short order. If Alivio had filed this action in a timely manner it could easily have been disposed of on cross-motions for summary judgment on a normal briefing schedule and, even if Alivio had prevailed it would have only been entitled to a declaratory judgment, for reasons explained below. Thus, by delaying, Alivia is attempting to obtain more relief via a TRO than it could have obtained after a final judgment.

**ARGUMENT**

I.     **Alivio's Claim Regarding the NLRB Members' Removal Protections is Not Ripe for Review**

The ripeness doctrine, "through avoidance of premature adjudication, [prevents courts] from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). Where a "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (citation omitted).

Alivio's argument about the President's authority to remove Board members relies precisely on speculative "future events that . . . may not occur at all." Any removal protections extended to *Board Members* is not implicated by the commencement of a hearing before an *ALJ*. Under the NLRA, the NLRB itself may never hear or decide the case. Only if a party seeks review of an adverse ALJ decision does the Board even consider a case. *See* 29 C.F.R. §§ 102.46(a), 102.48(a). And, even if a party to the instant proceeding before the ALJ ultimately seeks review of a final decision by the ALJ, the resulting Board consideration of the matter is not imminent. If, after the hearing and issuance of a decision by the ALJ, exceptions are filed with the Board, Alivio can renew its motion at that time.

Accordingly, any request for injunctive relief based on Alivio's removal-protections claim related to the Board Members is not ripe and must be denied.

II.     **Alivio Fails to Even Suggest a Presidential Desire to Remove the ALJ or Board Members, which is Required to Secure Injunctive Relief**

The "unlawfulness of [a] removal provision does not strip [an inferior officer] of the power to undertake the . . . responsibilities of his office." *Collins v. Yellen*, 594 U.S. 220, 258 n. 23 (2021). Unlike cases involving defects in *appointment*s of executive officers, where actions of

"officers [who] were vested with authority that was never properly theirs to exercise" are "void *ab initio*," "[r]estrictions on removal are different. In such cases the conclusion is that the officers are duly appointed by the appropriate officials and exercise authority that is properly theirs." *Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (en banc). Accordingly, a plaintiff challenging agency action due to alleged unconstitutional removal protections may only secure injunctive relief by proving that the removal restrictions *would make a difference* in their particular case and thereby inflict "compensable harm"—for instance, where "the President had attempted to remove [an officer] but was prevented from doing so" or "had made a public statement expressing displeasure" with the officer's actions. *Collins*, 594 U.S. at 259–60.

Thus, unless Alivio can produce some evidence showing that the President's desire to control his subordinates has been frustrated in this case, it does not face an illegitimate decisionmaker. It faces an ALJ who is fully vested with and may (indeed, *must*) lawfully exercise the executive power properly vested in her.

While the Seventh Circuit has yet to address the question, no fewer than eight circuit courts have applied this principle after *Collins*, making clear that a plaintiff cannot secure relief—including injunctive relief—on a removal-restrictions claim without showing the protection has frustrated a Presidential desire to remove a specific officeholder. *See, e.g., Leachco*, 103 F.4th at 757 (holding that plaintiff must show that "the challenged removal provisions actually impacted, or will impact, the actions taken by the [agency] against it" and because it did not, plaintiff "failed to establish that it would suffer future irreparable harm if the preliminary injunction is denied"); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 615 (3d Cir. 2024) (affirming dismissal where plaintiff failed to establish "any link whatsoever between the removal provision and [its] case"); *CFPB v. L. Offs. of Crystal Moroney*,

*P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (holding that plaintiff must "show that the agency action would not have been taken *but for* the President's inability to remove the [officer]"); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (holding that claim must be dismissed "absent reason to believe that the unconstitutional removal provision itself inflicted harm"); *Cmty. Fin. Servs. Assoc. of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*") (requiring plaintiff to show a "substantiated desire" by the President to remove the officer, a "perceived inability" to do so, and a "nexus" between the desire and the challenged actions); *Calcutt*, 37 F.4th at 318 (asserting the "very possibility that harm *might* occur" is insufficient; rather, *Collins* requires that a "more concrete showing was needed"); *Bhatti v. FHFA,* 97 F.4th 556, 561 (8th Cir. 2024) (requiring "some nexus" to Presidential inability to remove officer); *Decker Coal Co. v. Pehringer*, 32 F.4th 843, 849 (9th Cir. 2021) (rejecting challenge where there was "no link" between ALJ decision and removal provisions). There is no circuit-level precedent to the contrary.

Alivio acknowledges that district courts in this Circuit "have generally stated a claimant seeking relief [for a removal-protection claim] must show that the restriction caused him harm in some direct and identifiable way," Mot. 19; PageID #:100 (cleaned up); however, that statement downplays that *every one* of those district courts—in dozens of decisions—have dismissed removal-protection arguments for failure to show compensable harm.[2]

---

[2] *See, e.g., Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621 *8-9 (N.D. Ill. Oct. 25, 2023) (Cummings, Mag. J.) ("In *Collins v. Yellen*,[] the Supreme Court clarified that a party challenging an agency action as violative of the separation of powers must provide a nexus between the limitation on the President's removal power and the harm caused to that party."); *Mario G. v. O'Malley*, 21-cv-472, 2024 WL 916234 *2 (N.D. Ill. Mar. 4, 2024); *Patricia G. v. Kijakazi*, No. 21 C 1208, 2023 WL 8935004 *6 (N.D. Ill. Dec. 27, 2023) (collecting cases); *Lisette B. v. Kijakazi*, No. 20-cv-7685, 2023 WL 2572431 *2 (N.D. Ill. Mar. 20, 2023); *Teddy J.R. v. Kijakazi*, No. 21-cv-1847, 2022 WL 4367577 *2 (N.D. Ill. Sept. 21, 2022); *Mary B.D. v. Comm'r of Soc. Security*, No. 21-cv-1083, 2022 WL 4536123 *10 (C.D. Ill. Sept. 28, 2022);

5

Furthermore, it does not matter that Alivio seeks to enjoin a future administrative proceeding rather than vacate a decision already taken. *See* Mot. 19, PageID #:100 (suggesting that district court decisions in the Circuit requiring a showing of causal harm from removal protections are distinguishable because they involved a request for retrospective relief). The Second, Fifth, Sixth, and Tenth Circuits have all held that the relief analysis in *Collins* "applies to both retrospective and prospective relief." *Leachco*, 103 F.4th at 757; *see also L. Offs. of Crystal Moroney*, 63 F.4th at 180–81 (*Collins* "applies with equal force regardless of the relief sought by the party challenging the officer's actions"); *Calcutt*, 37 F.4th at 316 n.9 ("*Collins* does not rest on whether relief is prospective or retrospective."); *CFSA*, 51 F.4th at 632 (same). Once again, no circuit has held to the contrary.

This uniform analysis makes sense. Under a plain reading of *Collins*, Alivio would not be entitled to vacatur of an adverse Board decision based on a facial argument about ALJ removal protections—the proceedings and the order would be wholly lawful because they were conducted and issued by an officer validly appointed to exercise executive power, and Alivio would have suffered no injury traceable to the removal provisions. Indeed, to hold otherwise would frustrate the President's constitutional duty to "take Care that the Laws be faithfully executed"—the very duty that Alivio claims it is safeguarding—by *presuming* that the President wishes to remove *all* officers ostensible protected by unconstitutional removal protections even when he does not. U.S. Const. Art. II, Sect. 3. Alivio can therefore not possibly be entitled to a preliminary

---

*Kelly M. v. Kijakazi*, No. 2:21-cv-80, 2022 WL 3139468 *2 (N.D. Ind. Sept. 9, 2022); *Hirst v. Kijakazi*, No. 21-cv-992, 2022 WL 3924678 *7-8 (E.D. Wis. Aug. 31, 2022) (rejecting claim that being denied a constitutionally valid hearing before an ALJ was type of compensable harm required by *Collins*); *Biswabic v. Kijakazi*, No. 21-cv-536, 2022 WL 3755087 *7 (E.D. Wis. Aug. 30, 2022); *Cheryl T. v. Kijakazi*, No. 20-cv-6960, 2022 WL 3716080 *4-5 (N.D. Ill. Aug. 29, 2022) (collecting cases).

injunction halting a proceeding which: (1) is lawful and (2) which would proceed in exactly the same manner even if the statutory protection of the ALJ, or the Board Members, did not exist.

Alivio's only effort to address *Collin*'s causal-harm requirement is to argue that under *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), the mere appearance before a purportedly unconstitutionally insulated officer is itself sufficient harm to warrant injunctive relief. *See* Mot. 18; PageID #:99. That is plainly wrong.

*Axon* did not address the merits of a removal-protections claim or the showing necessary to warrant injunctive relief—it was a case about subject-matter jurisdiction. In deciding solely the question of whether a district court had jurisdiction over a removal-protection claim brought outside the process for review of an agency's decision, the Court held that "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" was a "here-and-now" constitutional injury that could be addressed in a proceeding collateral to post-enforcement judicial review. *Axon.* 598 U.S. at 191.

But whether or not Alivio has alleged facts that establish jurisdiction does not mean that it has alleged facts entitling it to relief. An unconstitutional removal restriction is, "remedially speaking, unique[,]" *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because the infirm removal provision "does not strip [an inferior officer] of the power to undertake the other responsibilities of his office," *i.e.*, does not render him or her an "illegitimate decisionmaker," unless the plaintiff makes a cognizable showing of harm, *Collins*, 594 U.S. at 258 n.23. No relief is warranted without that showing.

Put another way, *Axon* determined *where* (district court) and *when* (pre-enforcement) a plaintiff can challenge removal protections. But *Axon* did not modify *what* a plaintiff needs to

prove to demonstrate that the proceeding and decisionmaker it faces are, in fact, "illegitimate" or that it is entitled to either prospective or retroactive relief.[3]

The Tenth Circuit recently addressed the erroneous reading of *Axon* that Alivio presses. There, as here, a plaintiff sought a preliminary injunction against agency proceedings on the grounds that both ALJs and agency commissioners were unlawfully insulated from Presidential removal. *See Leachco,* 103 F.4th at 749. There, as here, the plaintiff's only alleged harm was the "constitutional injury of being subjected to an administrative proceeding carried out by an unconstitutionally structured agency." *Id.* at 753. And there, as here, the plaintiff pointed to "statements made by the *Axon* Court . . . to argue that subjection to proceedings before an unconstitutionally structured agency, alone, constitutes irreparable harm." *Id.* at 758.

The *Leachco* court explained that the "'here-and-now injury' language in *Axon* originated from *Seila Law*," a case that "concerned standing, *not* entitlement to injunctive relief." *Id.* at 759 (discussing *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020)). The Tenth Circuit noted that, in *Collins*, the Supreme Court "clarified [that] its 'here-and-now-injury' language from *Seila Law* … should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* (citing *Collins*, 594 U.S. at 258 n.24). Therefore, the Tenth Circuit undertook to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language," declining to read *Axon*'s "limited jurisdictional holding"

---

[3] Indeed, Justice Kagan, the author of the unanimous opinion in *Axon*, would be particularly astonished by the notion that *Axon* silently overruled *Collins*'s causal-harm requirement for prospective relief. In her concurrence in *Collins*, she made clear her view that "plaintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision," and that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference— and so no injunction should issue." 594 U.S. at 274–75 (Kagan, J., concurring).

as a "broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Id.* Simply put, "[t]he Supreme Court's jurisdictional analysis did not change the relief analysis required under *Collins*." *Id.* at 765.

Accordingly, nothing in *Axon* disturbs the remedial holding in *Collins*. Indeed, because "[i]mplied overrulings … are disfavored" and recognized only "in extremely rare circumstances[,]" *Cooper v. MRM Investment,* 367 F.3d 493, 507 (6th Cir. 2004), Alivio must present far more compelling proof that *Axon* intended to wipe away the compensable-harm showing required by *Collins* and its progeny. Without such compelling proof, this Court should heed the instruction of the Supreme Court in relation to the implicit overruling of binding precedent from a higher court: "The [lower court] should follow the case which directly controls, leaving to th[e higher c]ourt the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

As Alivio has not demonstrated the harm it needs to state a claim under *Collins*, the Court must deny its request for injunctive relief.

### A.  The Court Should Not Follow Out-of-Circuit District Court Decisions that Ignores the Causal-Harm Requirements

In its briefing, Alivio heavily relies on two unreported decisions granting injunctive relief based on similar removal-protections claims. *See, e.g.,* Mot. 9, 12-13; PageID #:90, 93-94 (citing *Space Exploration Technologies Grp. v. NLRB*, No. 24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024) ("*SpaceX*"); *Energy Transfer LP v. NLRB*, No. 24-0198, 2024 WL 3571494 (S.D. Tex. July 29, 2024)). These unreported decisions, currently on appeal to the Fifth Circuit, are clearly erroneous and should not be followed.

*First*, the *SpaceX* court attempted to limit the holding in *Collins* to its facts, arguing that the decision "at most stands for the proposition that when [there is] a properly *appointed* officer

with unconstitutional removal protection acts, appropriate retrospective relief does not include voiding said action," and observed that SpaceX had "a live claim for prospective relief." *SpaceX*, 2024 WL 3512082, at *6. But. As mentioned above, this reading of *Collins* is contrary to the Fifth Circuit precedent that holds that "*Collins* did not rest on a distinction between prospective and retrospective relief," but rather applies to all claims. *CFSA*, 51 F.4th at 631.

*Second*, the *SpaceX* court was led astray by the plaintiff's argument that *Axon*'s reference to a "here-and-now injury" in the jurisdictional context was equivalent to the irreparable harm showing necessary to secure an injunction. The *SpaceX* court did not discuss *Collins* or even *Axon* itself—instead, it merely cited another Texas district court decision that it claimed had held that "having to proceed before an unaccountable ALJ is an irreparable injury in the context of a Preliminary Injunction pursuant to a ALJ removal-protection claim." *SpaceX*, 2024 WL 3512082, at *6 (citing *SpaceX v. Bell*, 701 F. Supp.3d 626 (S.D. Tex. 2023)). The *SpaceX* court, however, misread the ruling in *Bell*, which held only that the plaintiff had established a sufficient "here-and now injury" to establish "standing to bring its removal claim," *not* irreparable harm for the purposes of injunctive relief.

The court in *Energy Transfer* similarly confused a here-and-now injury sufficient to establish standing to bring a removal claim with the harm required to gain relief on such a claim. The court cited *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), to claim that *Collins*' harm requirement is "readily satisfied" where a party alleges the injury of "being compelled to participate in an invalid administrative process." 2024 WL 3571494 at *4. But the Fifth Circuit in *Consumers' Research* was discussing *standing*, not whether the removal protections created harm warranting relief. *See* 91 F.4th at 349-50 ("The

separation-of-powers violation *plus* [Plaintiff's] concrete interest combine to satisfy the 'injury' element of standing." (emphasis in original)).

In contrast, the District Court for the District of Columbia, in dismissing a suit against the NLRB identical to the instant removal-protections suit, explained that "being forced to appear before executive officials who are not accountable to the President" may satisfy the standing requirement, but does not constitute the type of harm required by *Collins*. *Cortes v. NLRB*, No. 23-2954, 2024 WL 1555877 *5 (D.D.C. Apr. 10, 2024). That is the correct analysis.

**B.     If Alivio Were Correct, Virtually All Agency Adjudication Must Be Enjoined**

As Alivio makes clear, nothing about its constitutional claim is limited to the facts of its case. *All* the Board's ALJs, who hear hundreds of unfair labor cases a year, enjoy the same removal restrictions as the ALJ here. If Alivio's arguments were correct—meaning a plaintiff needed to show no Presidential desire to remove a specific ALJ, because a party suffers harm simply by being required to participate in a hearing before the ALJ—every one of the hundreds of employers or unions facing Board hearings today may grind the machinery of our Nation's labor law to a halt by simply parroting Alivio's legal arguments in a preliminary injunction motion.

Because the NLRB has exclusive jurisdiction over unfair labor practice charges, this would cause immense damage. For as long as any such injunctions are in place, employers would be empowered to prevent workers from acting together to improve their common lot, to discharge and discipline union supporters with impunity, and to violate their obligation to bargain in good faith. *See* 29 U.S.C. §§ 158(a)(1), (3), (5). Workers would not be made whole for the harm they suffer for these violations and Congress's policy of "protecting the exercise of workers of full freedom of association, self-organization, and designation of representatives of

11

their own choosing" and "encouraging the practice and procedure of collective bargaining" would be frustrated. 29 U.S.C. § 151. *That* would be irreparable harm which no subsequent judicial order could remedy.

Moreover, nothing about NLRB ALJs' removal protections is unique. *All* ALJs in the federal sector are protected from removal except for good cause established by the Merit Systems Protections Board, *see* 5 U.S.C. § 7521(a), whose members themselves have removal protections under 5 U.S.C. § 1202(d). And many ALJs are employed in agencies whose heads enjoy some kind of for-cause job tenure protections. *See, e.g.,* 42 U.S.C. § 902(a)(3) (Social Security Administration); 42 U.S.C. § 7171(b) (Federal Energy Regulatory Commission). If Alivio were correct, all enforcement proceedings before these critical federal agencies would be vulnerable to being enjoined.

As we have demonstrated, such drastic consequences are unmerited. The Supreme Court's rule that a causal link must be demonstrated between an unconstitutional removal protection, a particular inferior officer, and a specific agency action "prevents theories of formal presidential control from stymying the President's real-world ability to carry out his agenda." *Collins*, 594 U.S. at 274–75 (Kagan, J., concurring).

## III. Alivio's Subpoena Dispute Provides No Grounds for Injunctive Relief

Alivio's final merits argument amounts to no more than a claim that the ALJ in the pending unfair labor practice case committed procedural error by revoking Alivio's subpoena duces tecum. *See* Mot. 16-17; PageID #:97-98. That is no basis for enjoining the administrative proceeding.

*First*, this Court has no jurisdiction over the claim. The NLRA provides for a review procedure that channels appeals of Board orders to the courts of appeals. 29 U.S.C. §§ 160(e)

and (f). Under the Act, district courts have jurisdiction over only certain injunctive actions brought by the Board or a Board official. *See* 29 U.S.C. §§ 160(j) and (l). Accordingly, under the statute, Alivio's complaint against the ALJ's procedural ruling would have to be appealed to the Board and then to a court of appeals following a final order of the Board.

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court set out its test for determining when a party could challenge agency action outside of the statutory review procedures. Notably, Alivio neither cites *Thunder Basin* nor makes any attempt to show that it passes *Thunder Basin*'s test to establish jurisdiction. But even if it did, it would fail. Indeed, the cases Alivio cites to claim that the ALJ's decision to revoke the subpoena pursuant to the Board's regulation at 29 C.F.R. § 102.118 is inconsistent with the NLRA—*NLRB v. Seine and Line Fisherman's Union of San Pedro*, 374 F.2d 974 (9th Cir. 1967), *cert. denied*, 389 U.S. 913 (1967), and *NLRB v. Capitol Fish Company*, 294 F.2d 868 (5th Cir. 1961)—demonstrate that denying district court review of the claim would not "foreclose all meaningful judicial review," which is the first *Thunder Basin* consideration. *Thunder Basin*, 510 U.S. at 212-213. In both *Seine* and *Capitol Fish*, the court of appeals reviewed the subpoena decision through the normal statutory procedure. *See Seine*, 374 F.2d at 976 (explaining that the case is before the court on petitions for enforcement filed by the NLRB pursuant to 29 U.S.C. § 160(e)); *Capitol Fish*, 294 F.2d at 869 (explaining that the Board petitioned for enforcement). In *Seine*, the Ninth Circuit agreed that the ALJ's decision to revoke the subpoena was procedural error, but held that the error did not warrant denying enforcement of the Board's order. 374 F.2d at 981. In *Capitol Fish*, the Fifth Circuit also agreed that the ALJ's decision to revoke the subpoena was procedural error, and remanded the case to the Board. 294 F.2d at 876. Accordingly, it is clear that Alivio's claim can be meaningfully addressed on appeal from a final Board order.

13

The second *Thunder Basin* factor similarly weighs in favor of denying jurisdiction. As demonstrated by *Seine* and *Capitol Fish*, Alivio's claim is not "wholly collateral to [the] statute's review provisions." *Thunder Basin*, 510 U.S. at 212. The last *Thunder Basin* factor—whether the claim is "outside the agency's expertise"—also weighs against district court jurisdiction, as one of the Board's central functions is to review decisions of ALJs rendered after hearings during which there are often disputes concerning subpoenas. Such hearings are conducted, "as far as practicable," under the Federal Rules of Evidence. *See* 29 C.F.R. § 102.39. The agency thus has considerable expertise in addressing arguments in the nature of those made by Alivio here. Accordingly, the Court has no jurisdiction over the subpoena claim.

*Second*, even if this Court had jurisdiction, *Seine* and *Capitol Fish* further demonstrate there can be no irreparable harm caused by any potential procedural evidentiary error. In *Seine*, the court held that the error did not warrant denying enforcement of the Board's order, and in *Capitol Fish*, the court remanded the case to the Board due to the procedural error. Clearly then, any harm caused by the procedural error can be remedied after the fact. To hold otherwise would mean that any procedural error made by an NLRB ALJ would warrant injunctive relief, and would make the district court special masters over NLRB proceedings. Congress clearly did not intend for such a result.

As such, Alivio's subpoena dispute does not warrant injunctive relief.

## CONCLUSION

The Court should deny the motion.

14

Respectfully submitted,

/s/ George A. Luscombe, III
George A. Luscombe, III (IL #6290097)
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, LLP
8 South Michigan -19th Floor
Chicago, IL 60603
(312) 372-1361
gluscombe@laboradvocates.com

Harold Craig Becker, Senior Counsel
Maneesh Sharma, Associate General Counsel
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
cbecker@aflcio.org
(202) 637-5310

Steven K. Ury, General Counsel
Elena Medina, Associate General Counsel
John M. D'Elia, Assistant General Counsel
Service Employees International Union
1800 Massachusetts Avenue NW
Washington, D.C. 20006
steve.ury@seiu.org
(202) 730-716

Counsel for *Amici*

Date: September 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2024 I electronically filed the

foregoing *amici curiae* brief with the Clerk of Court to be served upon all parties of record via

the Court's CM/ECF System.

/s/ George A. Luscombe, III