**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALIVIO MEDICAL CENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 24-cv-7217** |
| ) | |
| **JENNIFER ABRUZZO, in her official** ) | **Judge Jeffrey I. Cummings** |
| **capacity as the General Counsel of the** ) | |
| **National Labor Relations Board,** ) | |
| **NATIONAL LABOR RELATIONS** ) | |
| **BOARD, a federal administrative** ) | |
| **agency, LAUREN M. McFERRAN,** ) | |
| **in her official capacity as the Chairman** ) | |
| **of the National Labor Relations Board,** ) | |
| **MARVIN E. KAPLAN, GWYNNE** ) | |
| **A. WILCOX, and DAVID M.** ) | |
| **PROUTY, in their official capacities** ) | |
| **as Board Members of the National** ) | |
| **Labor Relations Board, and PAUL A.** ) | |
| **BOGAS in his official capacity as an** ) | |
| **Administrative Law Judge of the** ) | |
| **National Labor Relations Board,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Alivio Medical Center ("Alivio") is a respondent in an unfair labor practice proceeding pending before the National Labor Relations Board ("NLRB") that is scheduled to proceed to an administrative hearing before an administrative law judge ("ALJ") on September 25, 2024. On August 14, 2024, Alivio filed its three-count complaint, (Dckt. #1), in this lawsuit against the NLRB, its General Counsel Jennifer Abruzzo, Chairman Lauren M. McFerran, Board Members Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and ALJ Paul A. Bogas, (collectively, "defendants"). Alivio alleges in Counts I and II that the structure of the NLRB is

unconstitutional because the removal procedures for the NLRB ALJs and NLRB Members violate Article II of the Constitution of the United States.  Alivio further alleges in Count III that "the ALJ's order revoking subpoenas violates due process and relies upon an overly broad interpretation of a rule not based upon any reasonable reading of the NLRA [National Labor Relations Act]."  (*Id.*, at 14).

On August 22, 2024, Alivio filed an opposed motion for a temporary restraining order and expedited preliminary injunction, (Dckt. #25), seeking to enjoin the NLRB from proceeding with a September 25 administrative hearing based on its claim that the hearing would constitute an unconstitutional proceeding because the NLRB's Members and ALJs are unconstitutionally insulated from removal.[1]  Pursuant to the schedule set by the Court, (Dckt. #32), defendants filed a response to the motion on September 3, 2024.  (Dckt. #29).  Shortly thereafter, the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") and the Service Employees International Union ("SEIU") sought and were granted leave to file *amici curiae* brief regarding Alivio's motion for injunctive relief.  (Dckt. #33).  The Court held a hearing on September 8, 2024, at which counsel for the parties appeared and offered argument, and the motion is now ripe for resolution.

For the reasons set forth below, plaintiff's motion for a temporary restraining order and expedited preliminary injunction, (Dckt. #25), is denied.

---

[1]Alivio initially sought a temporary restraining order and expedited preliminary injunction in connection with the due process claim it asserts in Count III.  After questions were raised at the hearing regarding whether this Court had jurisdiction over its due process claim, Alivio's counsel withdrew its request for injunctive relief as to that claim and indicated that it would seek leave to file an amended complaint to clarify its allegations.  *See* 9/6/24 Transcript (Dckt. #38), at 77.  Alivio has since filed a motion for leave to amend its complaint, (Dckt. #37), and the due process claim it seeks to assert therein will have no bearing on the Court's decision regarding Alivio's quest for injunctive relief.

I.      **BACKGROUND**

A.      **The Purpose of the NLRB**

The NLRB is an independent federal agency created by Congress in 1935 to protect employees' rights under the National Labor Relations Act (the "NLRA" or, simply, the "Act"), 29 U.S.C. §151 *et seq*.  Among other things, the Act protects the rights of employees to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. §157.  The NLRB has "the sole statutory authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP")."  (Dckt. #29 at 9-10); *Costello v. Grundon*, 651 F.3d 614, 624 (7th Cir. 2011) (recognizing that only the NLRB can "provide affirmative remedies for unfair labor practices.").  Allegations of ULPs "arise from charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel . . . finds merit to the charge" and issues a complaint, usually accompanied by a notice of hearing before an ALJ. (Dckt. #29 at 10) (citing 29 U.S.C. §160(b)).  The NLRB is comprised of its General Counsel, Board Members, and ALJs.

B.      **Duties and Powers of the Board Members and the General Counsel**

Pursuant to the NLRA, the multi-member Board consists of five members "appointed by the President by and with the advice and consent of the Senate" to serve five-year, staggered terms.  29 U.S.C. §153(a).  Significantly, "[a]lthough political balancing of the Board members is not mandated by the NLRA, 'there has been a tradition since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party.'"  *Yapp USA Auto. Sys., Inc. v. NLRB*, Case No. 24-12173, 2024 WL 4119058, at *2 (E.D.

Mich. Sept. 9, 2024), *quoting* Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 Colum. L. Rev. 9, 54 (2018) (internal quotation and citation omitted); *Cortes v. NLRB*, No. 23-2954 (JEB), 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024) (same). Furthermore, "[a]ny member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. §153(a).

"The NLRA, as originally enacted, granted the Board plenary authority over all aspects of unfair labor practice disputes: the Board controlled not only the filing of complaints but their prosecution and adjudication." *N.L.R.B. v. United Food & Co. Workers Union, Loc. 32, AFL-CIO*, 484 U.S. 112, 117 (1987). However, the Labor Management Act of 1947 ("LMRA"), 29 U.S.C. §141 *et seq.*, altered the Board's authority by "divid[ing] the old Board's prosecutorial and adjudicatory functions" between the NLRB's General Counsel and the Board (*id.*, at 117-18), to "differentiate between the General Counsel's and the Board's 'final authority' along a prosecutorial versus adjudicatory line." *Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 444 (5th Cir. 2022), *quoting NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 124 (1987); *Rieth-Riley Constr. Co. v. Nat'l Lab. Rels. Bd.*, No. 23-1899, --- F.4th ---, 2024 WL 3811837, at *5 (6th Cir. Aug. 14, 2024) (noting the Board serves an "adjudicatory function"). Consequently, courts have since characterized the Board as "an administrative body exercising quasi-judicial powers." *See, e.g., Haleston Drug Stores v. N.L.R.B.*, 187 F.2d 418, 421 (9th Cir. 1951).

At present, "[t]he primary duty of the NLRB is to enforce the [NLRA], a task that it carries out (almost) exclusively by adjudicating labor disputes." *Cortes v. NLRB*, 2024 WL 1555877, at *1. The Board Members' duties and powers include, *inter alia*, adjudicating and issuing agency decisions in ULP cases, 29 U.S.C. §160(c), and petitioning courts for the

enforcement of such orders, 29 U.S.C. §160(e); conducting and certifying the outcome of union elections, 29 U.S.C. §159; promulgating rules and regulations, 29 U.S.C. §156; and, at the close of each fiscal year, submitting a written report to Congress and to the President "summarizing significant case activities and operations for that fiscal year." 29 U.S.C. §153(c).

By contrast, the General Counsel – who is "appointed by the President, by and with the advice and consent of the Senate, for a term of four years" – has a "purely executive function" that "is detached from the Board's adjudicatory function." *Rieth-Riley*, 2024 WL 3811837, at *5; 29 U.S.C. §153(d). Among other things, the General Counsel has the "final authority" in respect to the supervision of all NLRB attorneys (other than ALJs and legal assistants to Board Members), the investigation of charges, the issuance and withdrawal of complaints, and the prosecution of such complaints before the Board. 29 U.S.C. §153(d); *Rieth-Riley*, 2024 WL 3811837, at *4-5. The NLRA does not specify removal authority for the General Counsel and, as such, she serves "at the President's pleasure" and is removable at will. *Collins v. Yellen*, 594 U.S. 220, 248 (2021) ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure.").[2]

### C.     Duties and Powers of the ALJs

The NLRB ALJs are appointed by the five-member Board in accordance with the Civil Service Reform Act, 5 U.S.C. §3105, and the NLRA, 29 U.S.C. §154(a), to "inquire fully into the facts as to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting commerce as set forth in the complaint." 29 C.F.R. §102.35(a). In doing so, the

---

[2] Although Alivio brings this action against General Counsel Jennifer Abruzzo, it has not alleged that she is unconstitutionally insulated from removal or otherwise sought any specific relief as to her authority.

NLRBs ALJs are afforded the power to, *inter alia*, (1) "[a]dminister oaths and affirmations;" (2) grant applications for subpoenas and rule upon petitions to revoke subpoenas; (3) "[r]ule upon offers of proof and receive relevant evidence;" (4) "[t]ake or cause depositions to be taken;" (5) "regulate the course of the hearing," including to "exclude persons or counsel from the hearing for contemptuous conduct;" (6) hold settlement conferences; and (7) resolve motions, including motions for default judgment, summary judgment, or to amend pleadings. *Id*. at §102.35(a)(1)-(13). After a hearing, the assigned ALJ issues a decision that contains "findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case." 29 C.F.R. §102.45(a).

After the ALJ issues a decision, parties may file "exceptions to the [ALJ's] decision or to any other part of the record or proceedings (including rulings upon all motions or objections)." 29 C.F.R. §102.46(a). If no exceptions are filed, "the findings, conclusions, and recommendations contained in the Administrative Law Judge's decision will . . . automatically become the decision and order of the Board and become its findings, conclusions, and order. 29 CFR §102.48; 29 U.S.C. §160(c). Nonetheless, even if no party has filed a relevant exception, the Board may reverse a finding made by the ALJ. *Hedstrom Co. v. NLRB*, 629 F.2d 305, 315-16 (3d Cir. 1980). Moreover, the Board is not required to use an ALJ and it may elect to preside over an enforcement action itself. 29 CFR §102.50. Furthermore, even when an ALJ has been assigned to preside, the Board is "free to adopt findings of fact and conclusions of law different from the ALJ's conclusions." *Local 65-G, Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters v. N.L.R.B.*, 572 F.3d 342, 348 (7th Cir. 2009).

Removal of NLRB ALJs involves a two-step process prescribed by statute: (1) the Board must bring an action to remove an ALJ; and (2) the Merit Systems Protection Board ("MSPB"),

an independent federal agency, must then determine that good cause for removal has been established.  5 U.S.C. §7521(a).  As for the members of the MSPB, they may only be removed for "inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. §1202(d).

### D.    The Underlying NLRB Proceedings Against Alivio

Alivio is a bilingual, bicultural non-profit Federally Qualified Health Center that offers "access to quality cost effective health care and services to the Hispanic community, the uninsured and the underinsured, regardless of their immigration status."  (Dckt. #25-1 ¶2).  In June 2022, Alivio notified several union and non-union employees that it received notice from the Internal Revenue Service ("IRS") that the social security numbers each employee had provided upon hire did not match the names in the IRS' records.  (Dckt. #25-3 ¶2).  Alivio required the employees to resolve the social security "no match" discrepancy by July 25, 2022.  (Dckt. #25-5 at 4).  Ultimately, Alivio determined that four employees provided false information at the time of hire and terminated their employment.  (Dckt. #25-3 ¶¶3-4).

In late July 2022, the SEIU Healthcare IL/IN MO/KS (the "Union") filed its initial charge with the NLRB regarding the "no match" terminations, which it subsequently amended on three occasions.  On March 14, 2023, the NLRB issued a ULP complaint and notice of hearing (in NLRB Case No. 13-CA-300158), alleging, *inter alia*, that Alivio violated Section 8(a)(5) and (1) of the NLRA by refusing to bargain over changes, and the effects of changes, to its policy for handling the receipt of IRS "no match" letters for current employees, specifically requiring that employees resolve such discrepancies within a specific time period.  (Dckt. #25-5).

Pursuant to the notice of hearing accompanying the complaint, the administrative hearing was initially set to proceed on July 26, 2023, before ALJ Paul Bogas.  (*Id*. at 6).  Since that time, however, the administrative hearing has been rescheduled three times – with no opposition from

either party – due to events outside of their control, including unavailability of various witnesses, counsel, and a hearing space. (Dckt. #29 at 12 n.3). Shortly after filing the complaint in this matter, Alivio filed a request to postpone the administrative hearing pending resolution of this case (and its appeal of the ALJ's order revoking subpoenas). (Dckt. #25-4 at 5). On August 22, 2024, the NLRB denied that request and the hearing is set to proceed on September 25, 2024. (Dckt. #25-10).

## II.    STANDARD FOR INJUNCTIVE RELIEF

"The standards for granting a temporary restraining order and [a] preliminary injunction are the same." *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F.Supp.3d 427, 433 (N.D.Ill. 2019) (citation omitted). In either instance, "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000), *quoting Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184 (7th Cir. 1989) ("A preliminary injunction is a very serious remedy, 'never to be indulged in except in a case clearly demanding it.'"). ‼

To decide whether injunctive relief is warranted, courts in the Seventh Circuit engage in a multi-step inquiry involving a threshold phase and a balancing phase. *See Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022). First, the moving party – here, Alivio – has the burden of making a threshold showing that (1) it is likely to succeed on the merits; (2) traditional legal remedies would be inadequate; and (3) it will suffer irreparable harm absent a preliminary injunction. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). If the moving party does, however, make a showing of each of the threshold

requirements, the court moves to the balancing phase where the court "weighs the harm of denying an injunction to the [movant] against the harm to the [opposing party] of granting one." *Life Spine, Inc.*, 8 F.4th at 549 (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). In balancing the harms, the court also considers the public interest in granting or denying the injunction. *Life Spine, Inc.*, 8 F.4th at 539.

With respect to the likelihood of success on the merits, the Seventh Circuit has made clear that the moving party "need not show by a preponderance of the evidence that [it] will win [its] suit." *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) (citing *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021)). Nonetheless, "the mere possibility of success is not enough" and the movant must instead "make a 'strong' showing on the merits." *Id.*; *see also Life Spine, Inc.*, 8 F.4th at 539 ("We recently clarified that a plaintiff must demonstrate that its claim has some likelihood of success on the merits, not merely a better than negligible chance.") (internal quotation marks omitted). "The precise showing necessary 'depends on the facts of the case at hand . . .'" *Life Spine, Inc.*, 8 F.4th at 540, *quoting Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020).

If the moving party "fails to meet *any* of the threshold requirements for a preliminary injunction including likelihood of success on the merits, the court '*must deny* the injunction.'" *Martinez v. City of Chicago*, 534 F.Supp.3d 936, 955 (N.D.Ill. 2021), *quoting GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (emphasis added). Thus, if a plaintiff seeking injunctive relief cannot meet its burden of showing a likelihood of success, "a court must deny the injunction regardless of how heavily any other equities may weigh in the plaintiff's favor." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 458 n.1 (7th Cir. 1993) (cleaned up); *Curtis v. Thompson*, 840 F.2d 1291, 1297 (7th Cir. 1988) ("The denial of an injunction based

solely upon a plaintiff's failure to establish a negligible chance of success on the merits has been expressly sanctioned by this and other circuits") (citing cases).  Indeed, if a plaintiff fails to show a likelihood of success, the court need not even address the other factors relevant to obtaining injunctive relief.  *See, e.g., Doe v. University of Southern Indiana*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (where plaintiff fails to demonstrate "some likelihood of success on the merits," the court "need not address the remaining elements" even if "the balance of harms weighed overwhelmingly in [plaintiff's] favor"); *Lukaszczyk v. Cook County*, 47 F.4th 587, 598 (7th Cir. 2022) (same, and noting that whether or not plaintiff can show a likelihood of success "is often decisive."); *Curtis*, 840 F.2d at 1296.

## III.   ANALYSIS

The parties dispute whether the removal procedures for the NLRB's Members and ALJs impermissibly impinge on the President's executive power in violation of Article II of the Constitution.  For the reasons stated below, the Court finds that Alivio has failed to carry its burden of showing that it has a likelihood of success on its claims that the NLRB's Members and ALJs are unconstitutionally insulated from removal.

### A.  The Take Care Clause Within Article II of the Constitution

In 2020, the Supreme Court explained that:

Under our Constitution, the 'executive Power' – all of it – is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.' Art. II, § 1, cl. 1; *id.*, § 3.  Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance.  Ten years ago, in *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477 . . . (2010), we reiterated that, 'as a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties,' *id.*, at 514 . . . .

The President's power to remove – and thus supervise – those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress, and was confirmed in the landmark decision *Myers v. United States*, 272

10

> U.S. 52 . . . (1926). Our precedents have recognized only two exceptions to the President's unrestricted removal power. In *Humphrey's Executor v. United States*, 295 U.S. 602 . . . (1935), we held that Congress could create expert agencies led by a *group* of principal officers removable by the President only for good cause. And in *United States v. Perkins*, 116 U.S. 483 . . . (1886), and *Morrison v. Olson*, 487 U.S. 654 . . . (1988), we held that Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties.

*Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203-04 (2020) (emphasis in original). In analyzing the constitutionality of the restrictions on the president's ability to remove the NLRB's Members and ALJs, the first step is to determine whether their tenure protection falls within one of the two established exceptions to the president's general removal authority. *Id.*, at 215-18; *Yapp USA Auto*, 2024 WL 4119058, at *4.

**B. Alivio Has Failed to Show a Likelihood of Success on its Claim That the Removal Protections for the NLRB Members Violate Article II of the Constitution.**

In *Humphrey's Executor*, the Supreme Court considered a constitutional challenge to the removal protections given to the Federal Trade Commission's ("FTC") Commissioners in 1935 and held that Congress was permitted "to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions" and "that do not wield substantial executive power." *Seila L.*, 591 U.S. at 216, 218 (citing *Humphrey's Executor*, 295 U.S. at 619-20, 624, 628, 631-32)); *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 353 (5th Cir. 2024) (citing *Seila L.*, 591 U.S. at 218). The parties dispute whether the *Humphrey's Executor* removal exception – which Alivio concedes has not been overruled by the Supreme Court (Dckt. #25 at 20) – applies to shield the removal protections for the NLRB's Members from a finding that they are unconstitutional.

The Supreme Court has not yet had occasion to consider whether the *Humphrey's Executor* removal exception applies to the removal protections for the NLRB's Members and the

Seventh Circuit has yet to consider the application of the exception in any context. However, a number of courts have considered whether the removal protections for members of multimember commissions fall within the parameters of the *Humphrey's Executor* removal exception.

Specifically, both the Tenth Circuit and the Fifth Circuit have held that the removal protections for officers serving on the multimember Consumer Product Safety Commission ("CPSC") are constitutional under the *Humphrey's Executor* removal exception. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 760-63 (10th Cir. 2024) (holding that the removal protections for the CPSC are constitutional); *Consumers' Rsch.*, 91 F.4th at 345-46 (same) & at 352 (recognizing that the *Humphrey's Executor* removal "exception still protects any 'traditional independent agency headed by a multimember board'"); *see also United States v. SunSetter Prod. L.P.*, No. 23-CV-10744-ADB, 2024 WL 1116062, at *4 (D.Mass. Mar. 14, 2024) (citing to *Consumers' Rsch.* and finding that "the CPSA's for cause removal provisions are constitutional.").

The Fifth Circuit likewise held that the removal protections for the modern – and more robust – FTC pass constitutional muster under the *Humphrey's Executor* removal exception:

> Illumina claims that the FTC unconstitutionally exercised executive powers while insulated from presidential removal in violation of Article II. But *Humphrey's Executor v. United States* held that the FTC's enabling act did not run afoul of Article II because, essentially, the FTC was vested with quasi-legislative/quasi-judicial authority rather than purely executive authority. . . . While the Supreme Court has cabined the reach of *Humphrey's Executor* in recent years,[3] it has expressly declined to overrule it. . . . . Thus, although the FTC's powers may have

---

[3] Most notably, in *Seila L.*, the Supreme Court declined to extend the *Humphrey's Executor* removal exception to the removal protections for the sole director of the Consumer Financial Protection Bureau, an independent agency that "wields significant executive power," "lacks a foundation in historical practice[,] and clashes with constitutional structure by concentrating power in unilateral actor insulated from Presidential control." *Seila L.*, 591 U.S. at 204; *Collins v. Yellen*, 594 U.S. 220, 251-56 (2021) (citing *Seila L.* and holding that the single director structure and removal protections in the Federal Home Loan Mortgage Corporation unconstitutionally limited the President's removal power). The *Seila L.* Court expressly stated that it "d[id] not revisit *Humphrey's Executor* or any other precedent" when ruling on the constitutionality of the removal procedures at issue in that case. *Seila L.*, 591 U.S. at 228.

> changed since *Humphrey's Executor* was decided, the question of whether the
> FTC's authority has changed so fundamentally as to render *Humphrey's Executor*
> no longer binding is for the Supreme Court, not us, to answer.

*Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1046-47 (5th Cir. 2023) (cleaned up and

footnote added).  Furthermore, two district courts have considered whether the *Humphrey's*

*Executor* removal exception applies to the removal protections for the NLRB's Members and

reached opposite conclusions.  *Compare Yapp USA Auto*, 2024 WL 4119058, at *5 (finding that

"the NLRB appears to fall comfortably within the *Humphrey's Executor* exception") *with Space*

*Exploration Technologies Corp. v. National Labor Relations Board* ("*SpaceX*"), Civil No. W24-

CV-00203-ADA, 2024 WL 3512082, at *4 (W.D.Tex. July 23, 2024) ("Finding that NLRB

Member's removal protection [is] constitutional would require this court to expand *Humphrey's*

*Executor* where the Supreme Court has repeatedly declined to do so.").

When considering whether the removal procedure for an agency's board members or

commissioners fits within the *Humphrey's Executor* removal exception, courts consider the

organizational features of the agency:

> (1) does it have multiple members who are non-partisan or balanced along partisan
> lines?
>
> (2) are the members' duties neither political nor executive but instead call for the
> trained judgment of a body of experts informed by experience?
>
> (3) are the terms of the members staggered to enable the agency to accumulate
> technical expertise and avoid a complete change in leadership at any one time?
>
> (4) does the agency function as a legislative or judicial aid in a quasi-legislative and
> quasi-judicial manner that does not exercise any enforcement power, or does it
> "promulgate binding rules" fleshing out federal statutes, "unilaterally issue final
> decisions awarding legal and equitable relief in administrative adjudications," and
> have the power to "seek daunting monetary penalties against private parties on
> behalf of the United States in federal court"? and
>
> (5) is the agency well-grounded in historical precedent or does it reflect a novel
> concept that lacks a historical pedigree?

*Seila L.*, 591 U.S. at 215-16, 218-19; *Humphrey's Executor*, 295 U.S. at 619-20, 624, 628; *Consumers' Rsch.*, 91 F.4th at 352-55; *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 313-14 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023); *Yapp USA Auto*, 2024 WL 4119058, at *5-6.

The organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception. To begin, "the NLRB was itself modeled after the FTC, and the NLRA was modeled after the FTC Act." *Yapp USA Auto*, 2024 WL 4119058, at *5 (citing *Dish Network Corp. v. Nat'l Lab. Rels. Bd.*, 953 F.3d 370, 375 n.2 (5th Cir. 2020)); *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 892 (7th Cir. 1990). To this end, as the court noted in *Yapp USA Auto*:

> Like the FTC, the NLRB is a multi-member independent, expert agency. The Board members, similar to the Commissioners, are balanced along partisan lines, serve staggered multi-year terms, and exercise quasi-legislative and quasi-judicial power. What is more, the NLRB's structure is not novel or new like the agencies at issue in the Supreme Court's recent removal power cases.

*Yapp USA Auto*, 2024 WL 4119058, at *5. The NLRB also performs a quasi-legislative function by making annual reports to Congress. *Leachco*, 103 F.4th at 761 (citing *Seila L.*, 591 U.S. at 215); 29 U.S.C. §153(c). Furthermore, in at least one sense, the NLRB has less authority than the FTC because "[t]he Board is given no power of enforcement. Compliance is not obligatory until the court, on petition of the Board or any party aggrieved, shall have entered a decree enforcing the [Board's] order as made, or as modified by the court." *In re NLRB*, 304 U.S. 486, 49 (1938); *Dish Network Corp.*, 953 F.3d at 375 n.2 (the NLRB "may be the only agency that needs a court's imprimatur to render its orders enforceable."); *NLRB v. Thill, Inc.*, 980 F.2d 1137, 1142 (7th Cir. 1992) (same).

14

On the other hand, the district court's decision in *SpaceX* – which found that the NLRB's Members' removal protection is outside the scope of *Humphrey's Executor* – is unpersuasive. In *SpaceX*, the court found that the *Humphrey's Executor* removal exception did not apply to the NLRB for three reasons.

First, the court opined that "the NLRB members clearly wield substantial executive power." *SpaceX*, 2024 WL 3512082, at *3. It is unclear, however, whether the NLRB Members, in fact, "wield substantial executive power." As explained above in Section I(B), the LMRA divided the authority and responsibility of the original Board and vested the General Counsel with the "extensive executive" and "prosecutorial functions" of the agency. *Rieth-Riley*, 2024 WL 3811837, at *4 & at *5 ("The General Counsel's purely executive function . . . is detached from the Board's adjudicatory function"). In any event, even if the NLRB's Members do "wield substantial executive power," the Fifth Circuit has recently held the exercise of such power does not in itself defeat the application of the *Humphrey's Executor* removal exception. *See Consumers' Rsch.*, 91 F.4th at 346 ("Although the Commission wields what we would today regard as substantial executive power, in every other respect it is structurally identical to the agency that the Supreme Court deemed constitutional in *Humphrey's*. Yet the district court concluded that the Commission's structure is unconstitutional under *Seila Law*. We disagree.").

Second, the *SpaceX* court distinguished the Fifth Circuit's decision in *Consumers' Research* and found that the NLRB was outside the scope of the *Humphrey's Executor* removal exception in reliance on SpaceX's argument that the NLRB has a "distinctive structure" that

"divides prosecutorial authority between its Members (in the Section 10(j) context)[4] and its politically accountable General Counsel (in unfair labor practice proceedings)." *SpaceX*, 2024 WL 3512082, at *4. However, the NLRA "permits the Board to delegate to the General Counsel its power to seek §10(j) relief," *Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009), including the final authority in deciding whether to petition for such injunctive relief. *Frankl v. HTH Corp.*, 650 F.3d 1334, 1353-54 (9th Cir. 2011) (citing cases). Furthermore, the Board has invariably made such delegations to the General Counsel, and §10(j) petitions are filed in federal district court by the General Counsel's Regional Directors as a matter of course. *See Gottfried v. Frankel*, 818 F.2d 485, 492 (6th Cir. 1987) ("we find it persuasive that Sixth Circuit cases analyzing section 10(j) petitions have been filed by a Regional Director. . . . In fact, we have not discovered a section 10(j) case in any circuit which was not filed by a Regional Director.") (cleaned up). Thus, the NLRB Board Members do not prosecute the §10(j) petitions, as *SpaceX* suggests.

Finally, the *SpaceX* court found that applying the *Humphrey's Executor* removal exception to the NLRB would be "an unjustified expansion of *Humphrey's Executor*" because the "[t]he removal protections for NLRB Members are even stricter than those that have insulated the FTC Commissioners." *SpaceX*, 2024 WL 3512082, at *4. In particular, the NLRB's Members are removable only "for neglect of duty or malfeasance in office" whereas the FTC Commissioners can be removed for "inefficiency, neglect of duty, or malfeasance in

---

[4] Section 10(j) of the NLRA (29 U.S.C. §160(j)) provides, in pertinent part, that:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.

office." *Id.* However, both the Fifth Circuit (in *Consumers' Research*) and the Tenth Circuit (in *Leachco*) have held that removal protections identical to those applicable to the NLRB's Members still fall within the *Humphrey's Executor* removal exception. *See Consumers' Rsch.*, 91 F.4th at 346, 355-56; *Leachco*, 103 F.4th at 761-64; *Yapp USA Auto*, 2024 WL 4119058, at *6 n.4. Furthermore, the Supreme Court has declined to broadly construe the "inefficiency, neglect of duty, or malfeasance of office" removal standard in the manner suggested by *SpaceX*. *See Seila L.*, 591 U.S. at 229.[5]

In sum: given the unpersuasive nature of the sole decision cited in support of its position,[6] the Court finds that Alivio has failed to meet its burden of establishing a likelihood of success on its claim that the removal protections for the NLRB Members violate the Take Care Clause of Article II of the Constitution.

---

[5] Legal commentators have likewise cast doubt on the proposition that the removal of "inefficiency" from the grounds upon which board members or commissioners can be removed from office renders unconstitutional the removal protections of independent agencies. As noted in one article:

> Congress, in erecting the commission system, made room for the President's constitutional obligations by permitting the President to remove unfaithful administrators. Congress keyed the President's removal authority to long-established grounds for official liability – neglect of duty and malfeasance in office. And it is no coincidence that in the case of the NLRB, SSA, Consumer Product Safety Commission, Commission on Civil Rights, U.S. Sentencing Commission, Foreign Service Grievance Board, and Independent Medicare Advisory Board, Congress limited the President's removal authority to those two causes alone. Article II, under *Myers*, could be said to require this minimum delegation – but nothing more.

Jane Manners & Lev Menard, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 69 (2021); *see also* Cass R. Sunstein & Adrian Vermeule, *Presidential Review: The President's Statutory Authority over Independent Agencies*, 109 Geo. L.J. 637, 649 n.68 (2021).

[6] *SpaceX* is the only decision cited by Alivio or uncovered by the Court's own research in which a court has struck down removal protections for officers serving on a multimember commission.

C. **Alivio Has Failed to Show a Likelihood of Success on its Claim that the Two-Level Tenure Protection Enjoyed by the NLRB ALJs Violates Article II of the Constitution.**

As explained above in Section I(C), NLRB ALJs have a two-level tenure protection: the Board must first bring an action to remove an ALJ and the MSPB, an independent federal agency, must then determine that good cause for the ALJ's removal has been established. The parties dispute whether the removal procedure applicable to the NLRB ALJs violates the Take Care Clause of Article II. To evaluate who has the better part of this dispute, the Court must consider the relevant Supreme Court precedent and the lower courts decisions applying it.

In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Supreme Court addressed the two-level tenure protection enjoyed by members of the Public Company Accounting Oversight Board ("PCAOB"). Congress created the PCAOB as a private nonprofit corporation and vested it with expansive powers: (1) to enforce the Sarbanes-Oxley Act, the securities laws, the rules of the U.S. Securities and Exchange Commission ("SEC") , its own rules, and professional accounting standards; (2) to regulate every accounting firm – both foreign and domestic – that participates in auditing public companies under the securities laws; and (3) to inspect accounting firms, initiate formal investigations and disciplinary proceedings, and issue sanctions. *Id.*, at 484-85. The PCAOB members could be removed by the SEC under certain limited circumstances and the SEC Commissioners themselves could not be removed by the President except for inefficiency, neglect of duty, or malfeasance in office. *Id.*, at 487. In performing their duties, the PCAOB members were inferior officers who "exercise[d] significant executive power" and enjoyed a two-level tenure protection. *Id.*, at 514.

18

The Supreme Court held that the two-level tenure protection for the PCAOB members was "contrary to Article II's vesting of the executive power in the President" because "[n]either the president, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the [PCAOB]." *Id.*, at 496. The Court, however, did not categorically deem unconstitutional all two-level tenure protection for inferior officers, and it expressly stated that its holding "does not address that subset of independent agency employees who serve as administrative law judges." *Id.*, at 507 n.10. The Court further noted that "unlike members of the [PCAOB], many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions, . . . , or possess purely recommendatory powers." *Id.* The constitutionality of two-level tenure protection for agency ALJs has not been addressed by the Seventh Circuit and it remains an open question in the Supreme Court. *Leachco*, 103 F.4th at 764 (citing *Lucia v. Securities and Exchange Commission*, 585 U.S. 237, 244 n.1 (2018)).

The circuits have split on the question of whether the *Free Enterprise* holding striking down the two-level tenure protection for the PCAOB members applies to the two-level tenure protection schemes afforded to agency ALJs like those employed by the NLRB. The Tenth, Ninth, and Sixth Circuits have held that such removal protections are constitutional, or likely so, where the ALJs perform a "purely adjudicatory function." *See Leachco*, 103 F.4th at 763-65 (holding that the removal protections for the CPSC ALJs are constitutional); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1129-36 (9th Cir. 2021) (holding that the two-level tenure protection scheme for the Department of Labor ALJs is constitutional); *Calcutt*, 37 F.4th at 319-20 (holding that the two-level tenure protection scheme for FDIC ALJs is likely constitutional); *H&R Block Inc. v. Himes*, No. 24-00198-CV-W-BP, 2024 WL 3742310, at *1-6 (W.D.Mo. Aug. 1, 2024)

(denying a motion for preliminary injunction on the ground that plaintiffs failed to show a likelihood of success on their constitutional challenge to the FTC's ALJs' removal protections). Moreover, in *Yapp USA Auto*, the court found that the NLRB ALJ's perform "purely adjudicatory functions" and – in reliance upon the above circuit court authority – held that that the ALJs' two-level removal protection appears valid under existing precedent. *Yapp USA Auto*, 2024 WL 4119058, at *8.

It is unclear whether Alivio disputes the proposition that ALJs who perform "purely adjudicatory functions" fall outside the scope of the *Free Enterprise* holding that struck down the removal protections for the PCAOB members. Instead, Alivio asserts that the two-level removal protection for the NLRB ALJs is within the scope of *Free Enterprise* and violates the Take Care Clause of Article II because the ALJs perform "substantial executive functions." (Dckt. #25 at 13-14). In support of its argument, Alivio relies on the Fifth Circuit's decision in *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463-65 (5th Cir. 2022), *aff'd on other grounds*, 144 S.Ct. 2117 (2024),[7] and two district court decisions from the Western and Southern Districts of Texas that treated *Jarkesy* as circuit precedent and followed it. *See SpaceX*, 2024 WL 3512082, at *3; *Energy Transfer, LP v. National Labor Relations Board*, No. 3:24-cv-198, 2024 WL 3571494, at *2 (S.D.Tex. July 29, 2024).[8]

---

[7] In its decision, the Supreme Court made clear that it affirmed the Fifth Circuit's decision on the Seventh Amendment ground alone and that it was not reaching the constitutional question at issue in this case. *Sec. & Exch. Comm'n v. Jarkesy*, 144 S.Ct. 2117, 2139 (2024).

[8] Alivio asserts that the NLRB has "conceded" that *Jarkesy* decides this issue. (Dckt. #25 at 14-15 n.2). However, the statement that Alivio claims is a concession was made during the argument in the *Energy Transfer* case where the district court was bound by *Jarkesy*, its circuit precedent. Moreover, the NLRB made it clear that it disagreed with *Jarkesy* and that it was preserving its counterargument for future stages of the case. *Energy Transfer*, 2024 WL 3571494, at *2 n.3.

In *Jarkesy*, the Fifth Circuit held that the removal restrictions for the SEC's ALJs were unconstitutional under the holding in *Free Enterprise* because the ALJs "perform substantial executive functions" and the two-level tenure protection impeded the President's ability to have sufficient control over the performance of their functions. *Jarkesy*, 34 F.4th at 463. Alivio claims that "there is no relevant difference between SEC ALJs and NLRB ALJs" and asserts that "the Fifth Circuit's reasoning in *Jarkesy* is persuasive as a synthesis of current Supreme Court precedent." (Dckt. #25 at 13). This Court respectfully disagrees with the latter proposition.

In particular, the Fifth Circuit's finding that the SEC ALJs perform substantial executive functions analogous to the PCOAB members in *Free Enterprise* is unpersuasive. The Supreme Court described the *adjudicatory* nature of the SEC ALJs' duties in *Lucia*, where the Court stated:

> An ALJ assigned to hear an SEC enforcement action has extensive powers – the authority to do all things necessary and appropriate to discharge his or her duties and ensure a fair and orderly adversarial proceeding. . . . Those powers include, but are not limited to, supervising discovery; issuing, revoking, or modifying subpoenas; deciding motions; ruling on the admissibility of evidence; administering oaths; hearing and examining witnesses; generally [r]egulating the course of the proceeding and the conduct of the parties and their counsel; and imposing sanctions for [c]ontemptuous conduct or violations of procedural requirements.
>
> As that list suggests, an SEC ALJ exercises authority comparable to that of a federal district judge conducting a bench trial.

*Lucia*, 585 U.S. at 241-42 (cleaned up). Moreover, there is no indication in either *Lucia* or *Jarkesy* that the SEC ALJs exercised the sort of "significant executive power" wielded by the PCOAB members who, among other things, initiated formal investigations, disciplinary proceedings, and enforcement actions, and regulated accounting firms.

For these reasons, this Court finds persuasive the opinion of the dissenting judge on the *Jarkesy* panel, who aligned himself with the Ninth Circuit's decision in *Decker* and found that

the SEC ALJs "solely perform an adjudicative function" that brings their two-level tenure protection outside the scope of the *Free Enterprise* holding. *Jarkesy*, 34 F.4th at 475-79 (W. Eugene Davis, J., dissenting). The Court is also persuaded by the *Yapp USA Auto* court's finding that the NLRB ALJs perform purely adjudicatory functions. *Yapp USA Auto*, 2024 WL 4119058, at *8; *supra*, at Section I(B). Alivio's counsel acknowledged at the hearing that Alivio has no evidence that the NLRB's ALJs exercise executive functions by initiating investigations or enforcement actions, filing complaints, or engaging in rulemaking or the development of policy for the agency. (Dckt. #38 at 26-29).

In sum: given the circuit split on the question of whether the two-level tenure protection scheme for ALJs who perform adjudicatory duties analogous to those performed by the NLRB ALJs is constitutional under the Take Care Clause of Article II, and the fact that this Court finds the decisions that are contrary to Alivio's position to be more persuasive, the Court finds that Alivio has failed to meet its burden of showing "it is *likely* to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections." (Dckt. #25 at 12) (emphasis in original); *see, e.g., Care One, LLC V. Nat'l Lab. Rels. Bd.*, No. 3:23-CV-00831 (RNC), 2023 WL 645761, at *1, 3-4 (D.Conn. Oct. 4, 2023) (denying injunctive relief on plaintiff's claim that the two-level, for cause protection against removal enjoyed by NLRB ALJs violates the Take Care Clause of the Constitution on the ground that a circuit split on the question defeats plaintiff's ability to show a likelihood of success on the issue); *Manis v. U.S. Dep't of Agric.*, No. 1:24-CV-175, 2024 WL 1770775, at *6 (M.D.N.C. Apr. 24, 2024) ("Because of inconsistencies in the caselaw and the lack of available precedent, Plaintiff does not demonstrate that he is likely to succeed on the merits of his claim that the ALJs' removal mechanism is unconstitutional."); *Ladenburg Thalmann & Co., Inc. v. Oragenics, Inc.*, No. 1:24-CV-21431, 2024 WL 2938821, at

*1 (S.D.Fla. June 11, 2024) (likelihood of success not shown where there was no binding Supreme Court or circuit authority and there was an even split in the other circuits on the issue).

## CONCLUSION

As the Seventh Circuit has repeatedly made clear, injunctive relief is an extraordinary remedy and that proposition certainly holds true in this case. Alivio's position – if accepted – would neuter the National Labor Relations Act by blocking all proceedings before the National Labor Relations Board, the independent agency that has steadfastly and exclusively enforced the statute for the past eighty-nine years against entities accused of unfair labor practices. Quite extraordinary, indeed. However, as explained herein, the injunctive relief sought by Alivio is not mandated by the governing Supreme Court precedent. To the contrary, Alivio has fallen far short in its effort to meet its burden of establishing a likelihood of success on the merits of its constitutional claims. Without this required showing, Alivio's quest for injunctive relief fails, and its motion for a temporary restraining order and expedited preliminary injunction, (Dckt. #25), is denied.

**DATE: September 13, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**